UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MARK TULL,                                          :
                                                   :
            Petitioner                             :
                                                   :
    v.                                             :  CIVIL NO. 3:CV-02-592
                                                   :
DONALD T. VAUGHN, ET AL.,                          :  (Judge Kosik)
                                                   :
            Respondents                            :


# M E M O R A N D U M

## INTRODUCTION

        Mark Tull, an inmate currently confined at the State Correctional Institution at Graterford,

Pennsylvania, originally filed this petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 in the United States District Court for the Eastern District of Pennsylvania on August 28,

2001.  The matter proceeded there until February 15, 2002, when it was transferred to this

court.[1]  Petitioner was convicted of two (2) counts of terroristic threats, one (1) count of reckless

endangerment, one (1) count of disorderly conduct, and two (2) summary offenses.  On

October 31, 1996, he was sentenced to a term of 23-120 months, to be followed by 5 years

_____

        [1]  While pending in the Eastern District Court, petitioner filed a Memorandum in support
of his petition.  The lag in time between the filing of the action and its transfer to this court was
due to the dismissal of the action without prejudice by the Eastern District due to petitioner's
failure to submit the filing fee.  When it was later discovered that the filing fee had in fact been
tendered, the Eastern District reopened the case and then transferred the matter here. (Doc. 1,
Attachs. 3-6.)  The action was transferred pursuant to 28 U.S.C. § 2241(d) because petitioner
challenges a conviction and sentence rendered in the Court of Common Pleas of Luzerne
County which is located within the Middle District of Pennsylvania.

probation.  In the petition Tull raises the following grounds: (1) denial of equal protection by the

police department by not having a specific policy for handling HIV positive arrestees; (2) the

destruction of physical evidence by police; (3) improper search warrant resulting in illegally

obtained evidence; and (4) ineffective assistance of counsel in failing to obtain witnesses

statements/subpoena witnesses.  For the reasons that follow, the petition will be denied.[2]

## PROCEDURAL HISTORY OF CASE

Following the issuance of a Show Cause Order by this court on April 24, 2002, a

response and supporting exhibits were submitted by respondents on May 29, 2002.  (Doc. 9.)

Petitioner thereafter submitted a traverse.  On July 31, 2002, the court issued an opinion

dismissing the petition on the basis of petitioner's failure to exhaust his claims and procedural

default.  (Doc. 12.)  Specifically, the court found that because Tull failed to appeal his claims to

the Pennsylvania Supreme Court, he had failed to exhaust and further failed to allege any

cause to excuse his procedural default.

Tull thereafter filed an appeal from this ruling with the Third Circuit Court of Appeals.  On

March 25, 2003, the Third Circuit granted Tull's request for a certificate of appealability on the

question of whether Pennsylvania Supreme Court Order 218, In re: Exhaustion of State

---

[2] Also pending are two motions filed by Petitioner seeking judgment on the pleadings
due to Respondents' alleged failure to answer the petition timely following the court's reopening
of this matter on April 19, 2005, following remand by the Third Circuit Court of Appeals. (Docs.
25, 27.)  A review of the docket reveals, however, that Respondents filed a motion for extension
of time to file a response nunc pro tunc on May 11, 2005, which was granted by the court on
May 13, 2005, directing a response to be filed on or before June 10, 2005.  A response was
thereafter timely filed on June 8, 2005.  Accordingly, these motions will be denied.

Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration

Docket No. 1 (Pa. May 9, 2000) ("Order 218"), makes discretionary review in the Pennsylvania

Supreme Court unavailable for purposes of the federal exhaustion requirement in 28 U.S.C.

§ 2254 or otherwise may constitute a general waiver of the exhaustion requirement. In filing the

instant habeas petition, Tull had argued that he did not file an appeal with the Pennsylvania

Supreme Court in light of Order 218.  This court ruled that Order 218 did not foreclose the filing

of a petition for discretionary review with the Pennsylvania Supreme Court.[3]

On March 15, 2005, the Third Circuit issued an Order vacating this court's order of July

31, 2002, and remanding the instant habeas petition for further proceedings.  In issuing their

ruling, the Third Circuit relied on the case of Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir.

2004) wherein said court held "that Order No. 218 renders review from the Pennsylvania

Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c)."

The Third Circuit did acknowledge that its decision in Lambert was not issued until after this

court's dismissal of Tull's petition.  Prior to that time, there was no guidance from the Third

Circuit on this issue.  (Doc. 21.)

---

[3]  At the time this ruling was issued, there were district court cases finding that Order
218 did not foreclose the filing of a petition for discretionary review, see Mattis v. Vaughn, 128
F. Supp.2d 249 (E.D. Pa. 2001) and Blasi v. Attorney General, 120 F.Supp. 2d 451, 459 (M.D.
Pa. 2000).  Other authority existed, however, which found these cases to be unpersuasive and
holding that Order 218 itself recognizes a petitioner's right to present a claim to the
Pennsylvania Supreme Court, see Keener v. Varner, Civil Action No. 3:00-1558 (M.D. Pa. May
29, 2001 (Kosik, J.)

Following remand of the case, respondents were directed to file a response to the

petition and a supporting memorandum of law addressing the merits of Tull's claims.  (Doc. 22.)

A response was thereafter submitted on June 8, 2005.  (Doc. 26.)  A traverse was later

submitted by petitioner on July 21, 2005.  (Doc. 31.)  The matter is now ripe for disposition.

## FACTUAL BACKGROUND

The following recitation of facts is extracted from the opinion of the Pennsylvania

Superior Court on direct review.

> Freeland Borough Police Officer David Bogansky received reports
> that appellant was intoxicated and creating a public disturbance.
> Officer Bogansky and Officer Carol Stofka, his partner, responded
> but could not locate appellant. The officers received another report
> that appellant was attempting to break into the residence of Connie
> Dalessandro and was staggering and screaming. The officers
> searched again but could not locate appellant.  Following further
> complaints, the officers finally located appellant, who appeared
> drunk and disorderly.
>
> The officers possessed prior knowledge that appellant had tested
> H.I.V. positive.  Appellant not only acted intoxicated and disorderly
> but appeared to have blood on his hands. The officers did not have
> rubber gloves in their possession and were aware that any
> exchange of blood with appellant created the highest risk of
> exposure to H.I.V. infection.
>
> The officers arrested appellant.  They inquired if he had any sharp
> objects in his hands or pockets.  Appellant threw some coins at the
> hood of the police cruiser and leaped on top of it.  The officers
> seized him and placed him in the rear seat of the police cruiser.
> Since the officers lacked gloves, they did not struggle with
> appellant to handcuff him.  Appellant began to bite the Lexan
> screen separating him from the officers and threatened to urinate
> and infect them with the AIDS virus.  While being placed in a
> holding cell, appellant grabbed Officer Bogansky's glove and

twisted it, tearing the glove from the officer's hand.  Officers Bogansky and Stofka then left appellant in the cell to prepare the complaint.  When they returned, they found appellant had urinated all over himself.  The officers transported appellant to the magistrate for arraignment.

Appellant informed the officers while being transported that he was suffering from painful sores in his mouth, was dying a slow, painful death, and wanted the officers to experience the same thing.  Appellant then threatened to sodomize the officers' wives and children and infect them with the AIDS virus.  When removed from the vehicle, appellant spat in Officer Bogansky's face, hitting him in the eyes and mouth.  Appellant also spat in Officer Stofka's face.  The officers feared exposure to H.I.V. infection.  They immediately visited a local hospital to obtain a base line test.

Officer Bogansky testified at the bench trial that fear of not knowing for certain that he was not infected was disturbing both to him and to his family. Dr. Eugene Gorski testified he treated Officer Bogansky but admitted on cross-examination that he never examined appellant.  Dr. Mark Lobitz testified he was the treating physician for Officer Stofka and will give him examinations every six months for the next year and yearly tests thereafter.  Neither officer yet has tested positive for H.I.V.  Dr. Steven Pancoast testified on behalf of appellant that saliva is not considered a high-risk medium capable of transmitting H.I.V.  Dr. Pancoast further testified it was important to know the viral load of the saliva since if it was low at the time, the very slight chance of infection would be even further reduced.

Appellant argued that there was no proof beyond a reasonable doubt that his spitting possibly could infect the officers.  His spit had been wiped from the face of the officers and cleaned out of the back seat of the police cruiser.  Thus, no samples of his spittle had been preserved, and there was no indication of its viral load and no one inspected appellant's mouth to determine if indeed there were open sores at that time.

In closing argument, counsel for appellant admitted appellant was intoxicated and disorderly, spat on the officers, and threatened to

> infect them but contended there was no proof that the saliva could
> infect the officers. He further asserted no one ever verified if
> appellant had open sores in his mouth. The trial court convicted
> him of all charges.  This appeal followed imposition of sentence.

(Doc. 39-1, Pa. Super. Ct. Op. dated July 9, 1997 at 1-4.)

## STANDARD OF REVIEW

A federal court is authorized to grant habeas relief to a prisoner "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States."  28 U.S.C. § 2254.  Habeas corpus relief shall be granted if the state court judgment: was contrary to clearly established federal law, as determined by the Supreme Court of the United States; involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or was the result of an unreasonable determination of the facts in light of the evidence presented in state court.  28 U.S.C. § 2254(d).

A state court judgment is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court "on a question of law, or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

A state court judgment involves an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  To be an unreasonable application of clearly established federal law, the state court's application must be objectively

unreasonable.  Id. at 409; Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000).  In determining

whether the state court's application of the Court's precedent was objectively unreasonable,

habeas courts may consider the decisions of inferior federal courts.  Matteo v. Superintendent,

171 F.3d 877, 890 (3d Cir. 1999).  State court factual determinations are entitled to a

presumption of correctness, and petitioner has the burden of rebutting that presumption by

clear and convincing evidence.  28 U.S.C. § 2254

## ANALYSIS OF CLAIMS

Based upon the Third Circuit's remand of this matter, the claims raised by petitioner are

considered exhausted and not procedurally barred.  The court will now address the claims on

the merits based upon the principles set forth above.

### A.      Equal Protection Claim

The first ground raised by Tull in his habeas petition is that the arresting officers denied

him equal protection of the law because they lacked a policy with regard to the handling of HIV

positive prisoners.  He claims that the officers did not utilize "universal safety precautions" in

their care, handling and control of him while in their custody.  He further contends that the

officers exploited his HIV positive status.

Pursuant to the principles announced in Preiser v. Rodriguez, 411 U.S. 475 (1973),

Telford v. Hepting, 980 F.2d 745, 748 (3d Cir.), cert. denied, 510 U.S. 920 (1993), a habeas

corpus petition is brought by a prisoner to challenge either the fact or the duration of his

confinement in prison.  Federal habeas corpus review is available only "where the deprivation

of rights is such that it necessarily impacts the fact or length of detention." <u>Leamer v. Fauver</u>, 288 F.3d 532, 540 (3d Cir. 2002).

The purportedly unconstitutional actions alleged by petitioner did not in any way extend the length of his confinement.  As such, it did not adversely affect the fact or duration of his incarceration.  Accordingly, this claim is not properly pursued in a habeas corpus action and will be dismissed.

### B.    Destruction of Evidence

Tull claims that the police officers destroyed physical evidence in his case which may have been of benefit to him at trial.  In particular, he contends that the police destroyed the saliva he expelled in the back of the police car when he spit at arresting officers, before his attorney could conduct tests on it.  He states that the saliva was wiped from the face of the officers and cleaned out of the back seat of the police cruiser.  This claim can be addressed without unnecessary elaboration in that there was never any dispute that Petitioner was HIV positive - - as a stipulation to this effect had been entered into by the parties.  Further, the state courts found overwhelming evidence throughout the record that Petitioner did spit at the officers.  In fact, this had been conceded.  At trial Petitioner did not deny being HIV positive or spitting in the officers' faces.  These two supported facts make irrelevant any failure of the police officers to preserve Petitioner's spit sample from the police cruiser. Any alleged saliva evidence would not have assisted Petitioner one way or the other with regard to the charges against him.  Petitioner argued only that his conduct did not constitute the crimes that he was

8

charged with committing.  As such, the court finds this claim to be without merit in that the state court findings are amply supported by the record.

### C.   Challenge to Search Warrant

Tull contends that the search warrant did not meet statutory provisions which therefore resulted in the use of illegally obtained evidence against him at trial.  In particular, Tull challenges whether the prerequisite was met before obtaining a search warrant to determine the serostatus of an individual.  Respondent contends that Tull's challenge to the warrant actually amounts to a challenge to the evidence seized under the exclusionary rule to the Fourth Amendment.  Respondent argues that Fourth Amendment exclusionary rule claims are cognizable on federal habeas corpus review only if there has been no opportunity for full and fair litigation of the claim in state courts.  In support of this argument, Respondent points to the case of Stone v. Powell, 428 U.S. 465 (1976).  In Stone, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 482.[4]  While the Court did not directly state what it means to have a full and fair opportunity to litigate a Fourth Amendment claim in state court, it did cite to the case of Townsend v. Sain, 372 U.S. 293 (1963).  Stone, 428 U.S. at 494 n.36.

---

[4]  The preclusion articulated in Stone v. Powell applies even if a federal court were to believe that the claim was wrongly decided by the state court.  See Gilmore v. Marks, 799 F.2d 51, 56 (3d Cir. 1986).

In <u>Townsend</u>, the Court held that a full and fair hearing does not occur if "(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; (6) for any reason the state trier of fact did not afford the habeas applicant a full and fair fact hearing."  372 U.S. at 313; <u>see</u> <u>also</u> <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1491 (3d Cir. 1994)(citing <u>Townsend</u> in discussing a full and fair opportunity to litigate).  The Third Circuit has concluded that a habeas petitioner had an opportunity for full and fair litigation where the state court provided an opportunity for a pretrial suppression motion and the Superior Court considered the claim on appeal.  <u>Reinert v. Larkin</u>, 211 F.Supp.2d 589, 597 (E.D. Pa. 2002), <u>aff'd</u>, ___ F.3d ___, No. 02-3184, 2004 WL 1774593 (3d Cir. Aug. 10, 2004) (citing <u>U.S. ex rel Hickey v. Jeffes</u>, 571 F.2d 762, 766 (3d Cir. 1978)).

In the instant case there is no question that Petitioner's Fourth Amendment claims were addressed by the state courts.  Petitioner was clearly afforded a full and fair opportunity to challenge the search warrant as evidenced by the July 27, 1999 PCRA hearing transcript wherein he fully set forth his Fourth Amendment argument to the PCRA court.  Thereafter, further briefing took place and by Order of December 14, 1999, the PCRA court denied Petitioner's Fourth Amendment claim on the merits setting forth its reasons for doing so and citing to the record for support.  Further, Petitioner took an appeal from this denial to the

Pennsylvania Superior Court, which was also denied.  Clearly, Petitioner has had an

opportunity for full and fair litigation of his Fourth Amendment claim in the state courts making

this claim not cognizable in the instant habeas corpus petition.  See Stone v. Powell, 425 U.S.

465 (1976).            **D.    Ineffective Assistance of Counsel**

      Petitioner claims that trial counsel was ineffective in failing to obtain a witness statement

from a Luzerne County Correctional Officer who was allegedly present during his alleged

assault on the police and could have possibly offered testimony to cast doubt on the testimony

given by the Commonwealth's witnesses.  The potential witness to whom Petitioner refers is

Correctional Officer Robert Hetro.

      The "clearly established federal law" applicable to Petitioner's claim of ineffective

assistance of counsel is the familiar two-pronged test the United States Supreme Court

articulated in Strickland v. Washington, 466 U.S. 668, 688 (1984).  Specifically, a defendant

must show that: (1) counsel's performance was deficient and, (2) the deficient performance

prejudiced the defense.  Prejudice has been defined as a "showing that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

See also Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate

a reasonable probability that, but for the unprofessional errors, the result would have been

different.").  On habeas corpus review, the pertinent inquiry is whether the state court rulings

that the Petitioner was not denied effective assistance of counsel are contrary to or an

unreasonable application of Supreme Court precedent, or are based upon an unreasonable

determination of the facts.  <u>Rompilla</u>, 355 F.3d at 250.  That is, the Petitioner "must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner."  <u>Id</u>.

In examining Tull's ineffective assistance of counsel claim, the state courts looked to the standard set forth in <u>Commonwealth v. Kimball</u>, 555 Pa. 299, 724 A.2d 326 (1999).  Under this standard, the petitioner must show that (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.  The state court then cited to <u>Commonwealth v. Smolko</u>, 446 Pa. Super. 156, 666 A.2d 672, 679 (1995), which found that in order to obtain relief on the basis of an ineffectiveness claim premised upon counsel's failure to call witnesses, the defendant must establish that : (1) the witness existed; (2) the witness was available; (3) counsel knew or should have known about the witness; (4) the witness was prepared to cooperate and testify at trial; and (5) absence of the testimony prejudiced the defendant.   This standard applied by the state courts is equivalent to the deficient performance and prejudice test of <u>Strickland</u>.  As such, the question narrows to whether the state courts unreasonably applied the governing standards to the facts of this case.

First, the state courts found that Petitioner was unable to establish that counsel's failure to pursue Hetro as a witness was deficient.  This finding was based upon the conclusion that what, if any, information counsel would have found is only open to speculation.  There was no

evidence that pursuing Hetro would have led to the discovery of exculpatory evidence.  Further, the failure of counsel to pursue Hetro did not result in any prejudice to Petitioner regarding his charge of assault.  Petitioner never claimed that the assault did not occur and Petitioner did not challenge the Commonwealth's version of what took place.  Rather, Petitioner argued that his conduct did not constitute aggravated assault or the other crimes of which he was charged.  As such, counsel cannot be found to be ineffective for failing to pursue witnesses to discredit the Commonwealth's version when such was not being challenged by Petitioner in the first place.  Absent a showing of a reasonable probability of a different outcome in the trial, an ineffective assistance claim lacks viability.  Based on the foregoing, it cannot be said that the state court applied Strickland to the facts of Petitioner's case in an objectively unreasonable manner.

## CONCLUSION

For all of the above reasons, the instant petition for writ of habeas corpus will be denied. An appropriate Order is attached.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK TULL, | : |
| | : |
| Petitioner | : |
| | : |
| v. | :   CIVIL NO. 3:CV-02-592 |
| | : |
| DONALD T. VAUGHN, <u>ET</u> <u>AL</u>., | :   (Judge Kosik) |
| | : |
| Respondents | : |

### O R D E R

_____**NOW, THIS 10**th **DAY OF NOVEMBER, 2005**, in accordance with the accompanying

Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **denied**.

2. Petitioner's pending motions for judgment on the pleadings (Docs. 25, 27) are **denied**.

3. The Clerk of Court is directed to mark this matter **closed**.

4. Based on the court's conclusion herein, there is no basis for the issuance of a certificate of appealability.

_____   s/Edwin M. Kosik_____

United States District Judge
